## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ENOVA TECHNOLOGY CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 13-1011-LPS |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| SEAGATE TECHNOLOGY (US) HOLDINGS, | ) |
| INC., and SEAGATE TECHNOLOGY LLC, | ) |
| | ) |
| Defendants. | ) |

## ANSWER TO COMPLAINT

Defendants Seagate Technology (US) Holdings, Inc. and Seagate Technology LLC (collectively, "Seagate"), by and through their undersigned counsel, hereby answer the Complaint of Enova Technology Corporation dated June 5, 2013. Except as specifically admitted, Seagate denies each of the allegations of the Complaint:

## PARTIES

1. Plaintiff Enova Technology Corporation ("Enova") is a corporation organized and existing under the laws of Taiwan, Republic of China, with its principal place of business in Hsin-Chu City, Taiwan, Republic of China.

**ANSWER:** Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint and therefore denies them.

2. Upon information and belief, Defendant Seagate Technology (US) Holdings, Inc. is a corporation incorporated under the laws of the State of Delaware and has a principal place of business at 10200 South De Anza Boulevard, Cupertino, California 95014.

**ANSWER:** Seagate admits that Seagate Technology (US) Holdings, Inc. is a corporation incorporated under the laws of the state of Delaware and has a place of business in California.

Except as specifically admitted herein, Seagate denies the allegations of paragraph 2 of the Complaint.

3. Upon information and belief, Seagate Technology (US) Holdings, Inc. is a corporate parent of Seagate Technology LLC.

**ANSWER:** Seagate admits that Seagate Technology (US) Holdings, Inc. is a corporate parent of Seagate Technology LLC. Except as specifically admitted herein, Seagate denies the allegations of paragraph 3 of the Complaint.

4. Upon information and belief, Seagate Technology LLC is a limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in Cupertino, California. Upon information and belief, Seagate Technology LLC develops, manufactures, imports, offers for sale and sells certain products, including hard disk drives, for consumers in the United States including in the District of Delaware.

**ANSWER:** Seagate admits that Seagate Technology LLC is a limited liability company organized and existing under the laws of the state of Delaware and has a place of business in Cupertino, California. Seagate admits that Seagate Technology LLC develops, imports, offers for sale, and sells disk drives and other products in the United States. Seagate admits that Seagate hard disk drives and other Seagate products have been sold and offered for sale in the District of Delaware. Seagate denies that any of these acts constitute infringing acts, and, except as specifically admitted herein, Seagate denies the remaining allegations of paragraph 4 of the Complaint.

5. Defendant Seagate Technology (US) Holdings, Inc. and Defendant Seagate Technology LLC are herein collectively referred to as "Seagate."

**ANSWER:** Seagate admits that the Complaint appears to refer to Seagate Technology (US) Holdings, Inc. and Seagate Technology LLC collectively as "Seagate." Seagate denies that the Complaint's collective reference to Seagate Technology (US) Holdings, Inc. and Seagate Technology LLC as "Seagate" would give rise to any joint or several liability on the part of those two entities, and, except as specifically admitted herein, Seagate denies the remaining allegations of paragraph 5 of the Complaint.

## JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, in that this is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.

**ANSWER:** Seagate admits that the Complaint alleges patent infringement. Seagate lacks knowledge or information sufficient to form a belief as to whether Enova is the current assignee, and the sole and exclusive owner of all right, title and interest in United States Patent Nos. 7,136,995 ("the '995 patent") and 7,900,057 (the "'057 patent"), and Seagate therefore is unable to admit that the Court has subject matter jurisdiction over this action. Except as specifically admitted herein, Seagate denies the allegations of paragraph 6 of the Complaint.

7. This Court has personal jurisdiction over Defendants because they have committed and continue to commit acts of direct and indirect patent infringement in this District as alleged in this Complaint. Furthermore, this Court has personal jurisdiction over Seagate Technology (US) Holdings, Inc. and Seagate Technology LLC by virtue of their incorporation in Delaware.

**ANSWER:** Seagate admits that Seagate Technology (US) Holdings, Inc. and Seagate Technology LLC are Delaware entities and that the Court has personal jurisdiction over Seagate

Technology (US) Holdings, Inc. and Seagate Technology LLC. Except as specifically admitted herein, Seagate denies the allegations of paragraph 7 of the Complaint.

## VENUE

8. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400.

**ANSWER:** To the extent that jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338, Seagate admits that venue is proper in this District. Except as specifically admitted herein, Seagate denies the allegations of paragraph 8 of the Complaint.

## FACTUAL BACKGROUND

9. Enova is the current assignee, and the sole and exclusive owner of all right, title and interest in United States Patent No. 7,136,995 ("the '995 patent"), entitled "Cryptographic Device." The '995 patent was duly and legally issued by the United States Patent and Trademark Office ("PTO") on November 14, 2006. The named inventor of the '995 patent is Shuning Wann. A copy of the '995 patent is attached hereto as Exhibit A.

**ANSWER:** Seagate admits that what appears to be a copy of U.S. Patent No. 7,136,995 is attached as Exhibit A to the Complaint. Seagate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 9 of the Complaint and therefore denies them.

10. Enova is the current assignee, and the sole and exclusive owner of all right, title and interest in United States Patent No. 7,900,057 (the "'057 patent"), entitled "Cryptographic Serial ATA Apparatus and Method." The '057 patent was duly and legally issued by the PTO on March 1, 2011. The named inventors of the '057 patent are Chung-Yen Chiu and Shuning Wann. A copy of the '057 patent is attached hereto as Exhibit B.

**ANSWER:** Seagate admits that what appears to be a copy of U.S. Patent No. 7,900,057 is attached as Exhibit B to the Complaint. Seagate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 10 of the Complaint and therefore denies them.

11. The inventions of the '995 and '057 patents are directed to technology for encrypting/decrypting storage media, such as disk drives, without materially compromising overall system performance. Prior to these inventions, encryption technology was too slow, had security vulnerabilities, and impractical for applying to the contents of entire drives.

**ANSWER:** Seagate admits that the title of what appears to be a copy of U.S. Patent No. 7,136,995 attached as Exhibit A to the Complaint is "Cryptographic Device" and that the title of what appears to be a copy of U.S. Patent No. 7,900,057 attached as Exhibit B to the Complaint is "Cryptographic Serial ATA Apparatus and Method." Except as specifically admitted herein, Seagate denies the allegations of paragraph 11 of the Complaint.

12. Defendants have ridden on the coattails of Enova's significant investments in R&D and market development by infringing Enova's patents, all to Enova's detriment.

**ANSWER:** Denied.

13. In or about April 2000, Mr. Wann founded Enova Technology, which has invested significantly in the technologies covered by the '995 and '057 patents and pioneered the development of ground-breaking products, including a real-time full disk encryption ASIC (Application Specific Integrated Circuit) introduced in February 2002.

**ANSWER:** Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the Complaint and therefore denies them.

14. Enova has also invested heavily in growing the market for such products, which Enova branded "X-Wall." In February 2002, Enova hosted a booth at the annual RSA Conference for the information security industry. Dr. Robert Thibadeau, a computer science professor from Carnegie Mellon University, visited Enova's booth and was impressed by the X-Wall. On information and belief, shortly thereafter, Dr. Thibadeau joined Seagate to head Seagate's security initiative.

**ANSWER:** Seagate admits that Dr. Robert Thibadeau was an employee of Seagate from about 2002 to about 2009 and was employed in the area of security. Seagate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 14 of the Complaint and therefore denies them.

15. In spring of 2003, Mr. Wann met with Dr. Thibadeau and members of Seagate's security team in Pittsburgh, Pennsylvania, to explain details on how real-time disk encryption was performed. Additionally, in summer of 2004, Mr. Wann met with members of Seagate's strategic marketing group in Colorado. Seagate expressed a desire to bring hardware encryption products to market with Enova's help. Seagate also indicated that it believed that Enova's hardware encryption technology would help Seagate differentiate its products in the hard drive market.

**ANSWER:** Seagate admits that Shuning Wann met with Seagate in Pennsylvania and Colorado on or about 2003 and 2004. Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Complaint relating to Enova's alleged meetings with Seagate or Seagate's alleged statements at such meetings and therefore denies them. Except as specifically admitted herein, Seagate denies the allegations of paragraph 15 of the Complaint.

16. Seagate and Enova entered into a Master Nondisclosure Agreement. Enova continued to educate Seagate about how to implement hardware encryption and how X-Wall ASICs were constructed. By 2005, Seagate asked Enova to help it develop a hardware encryption drive using Enova's technology. Seagate's principal hardware engineer, Monty Forehand, worked with Enova to implement the X-Wall technology in an ASIC design (the "CO"-branded X-Wall product). Seagate used these X-Wall CO ASICs in Seagate's first hardware encryption drives, targeted for mass production in 2006.

**ANSWER:** Seagate admits that it entered into a Master Nondisclosure Agreement with Enova. Seagate admits that Monty Forehand is a Seagate hardware engineer. Seagate admits that it used certain X-Wall ASICs in certain Seagate hard disk drives on or about 2006. Except as specifically admitted herein, Seagate denies the allegations of paragraph 16 of the Complaint.

17. In April 2005, Seagate began purchasing X-Wall ASICs from Enova. Around that time, Seagate published a "Product Overview" for its hardware encryption drives, to be branded "Momentus." Seagate touted these drives as featuring "Hardware-Based Full Disc Encryption (FDE)," that is, "Strong, transparent hardware-based data protection that prevents unauthorized access to data on lost or stolen laptops." Seagate further emphasized "Key Features and Benefits," including:

- Encrypts all data directly on the drive for worry-free protection
- No disc initialization, installation or configuration is required for the highest convenience and ease of use
- Drives that are stolen, taken out of service, or re-purposed remain fully protected
- Encryption speed matches the throughput of the drive interface for faster performance

**ANSWER:** Seagate admits that it purchased X-Wall ASICs from Enova. Seagate admits that it published a press release on June 8, 2005 describing its Momentus drive with

7

hardware-based full disk encryption. Except as specifically admitted herein, Seagate denies the allegations of paragraph 17 of the Complaint.

18. In June 2005, Seagate entered into a supply agreement with Enova for quantities in the hundreds of thousands or millions of ASICs. Enova continued to work closely with Seagate on developing and testing the Momentus drives. Enova entered into an independent contractor agreement with Seagate to provide additional technical services to Seagate. The independent contractor agreement stated that Enova "is the exclusive owner of certain Intellectual Property relating to the product known as the X-Wall® Chip," and Seagate acknowledged and agreed "that Enova will retain all rights relating to the Enova Preexisting IP used in connection with the Services. Enova reserves all rights relating to the Enova Preexisting IP." Knowing this, Mr. Forehand and Seagate engineers asked for and received Enova's technical assistance and information during the ensuing months about how Enova's encryption technology operates.

**ANSWER:** Seagate admits that it entered into an Independent Contractor Agreement with Enova in 2005 and a Delivery Agreement with Enova on or about late 2005 to early 2006. Seagate admits that the Independent Contractor Agreement includes the language quoted in paragraph 18 of the Complaint. Except as specifically admitted herein, Seagate denies the allegations of paragraph 18 of the Complaint.

19. Also in June 2005, Seagate announced that it was the "First Major HDD Maker to Deliver Notebook PC Drive With Hardware-Based Full Disc Encryption Security." Seagate highlighted that its full disk encryption "Delivers Strong, Easy-to-Use Data Security" that would be "increasingly important as thefts of notebooks with sensitive personal and business information continue to rise, with companies incurring millions of dollars of losses in lost or

stolen trade secrets and intellectual property and individuals facing the high cost of identity theft." Seagate further explained that because mobile professionals are "demanding stronger, easier to use encryption solutions to protect their sensitive information . . . [d]rive manufacturers such as Seagate that can deliver stronger security and higher capacity . . . will be in the sweet spot of market demand for notebooks."

**ANSWER:** Seagate admits that it published a press release in June 2005 that includes the language quoted in paragraph 19 of the Complaint. Except as specifically admitted herein, Seagate denies the allegations of paragraph 19 of the Complaint.

20. In its June 2005 announcement about its new Momentus 5400 FDE hard drive, Seagate distinguished its "hardware-based Full Disc Encryption (FDE)" from software-based encryption. Seagate said its hardware-based solution provides

> strong data protection and requires only a user key to encrypt all data, not just selected files or partitions, on the drive. What's more, Seagate FDE eliminates disc initialization and configuration required by encryption software, and allows hard drive data to be erased instantly so the drive can be redeployed. Seagate FDE puts all security keys and cryptographic operations within the drive, separating them from the operating system to provide greater protection against hacking and tampering than traditional software alternatives, which can give thieves backdoor access to encryption keys and are more vulnerable to viruses.

**ANSWER:** Seagate admits that it published a press release in June 2005 that includes the language quoted in paragraph 20 of the Complaint. Except as specifically admitted herein, Seagate denies the allegations of paragraph 20 of the Complaint.

21. In August 2005, Enova and Seagate continued to have design review meetings in contemplation of Seagate's further use of X-Wall ASICs in Seagate products. Seagate recognized the competitive objective that "FDE will provide Seagate an opportunity to set the standard in the nascent security technology marketplace, once again distinguishing Seagate from its competition." Seagate identified key benefits of FDE:

9

- No installation is required
- User does not need to invest precious time and effort to learn to use the product.
- All data at rest on the drive is encrypted; all data moving to or from the drive is decrypted.
- All data, including programs, hibernation files, and the Operating System are protected with strong encryption technology.
- FDE has no impact on performance in the PC, and minimal performance (less than 5%) on battery life.

Accordingly, Seagate planned to market its FDE products to emphasize these advantages and "value propositions":

- Ease of use
- Re-purposing of the drive
- Reduced life cycle costs
- Instantaneous key destruction, followed by an automatic generation of a new Key
- Greatly reduced time to remove access to data
- The encryption of ALL data on the drive automatically-without user interaction
- Compatibility with biometrics devices and security subsystems components

**ANSWER:** Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 21 of the Complaint, including those relating to Seagate's alleged statements, and therefore denies them.

22. Enova successfully delivered X-Wall ASICs to Seagate. Mr. Forehand visited Enova the first quarter of 2006 to show off a 100 GB Seagate Momentus drive using the X-Wall encryption ASIC and presented it to Mr. Wann as a gift. Shortly thereafter, Seagate provided a purchase order and forecasts for additional X-Wall ASICs.

**ANSWER:** Seagate admits that Enova delivered X-Wall ASICs to Seagate. Seagate also admits that Mr. Forehand visited Enova in early 2006 and presented a Momentus drive to Mr. Wann. Seagate lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 22 of the Complaint and therefore denies them.

10

23. Seagate continued to exploit FDE functionality as a key selling point of its drives, publishing white papers about FDE, touting FDE in advertisements, and explaining the advantages of Seagate's hardware-based encryption over software-based encryption. In January 2007, a Seagate senior vice president explained in an interview why consumers are willing to pay more for FDE.

**ANSWER:** Seagate admits that it has published marketing materials that describe Seagate's full disk encryption products. Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 23 of the Complaint and therefore denies them.

24. Seagate's efforts to bring its FDE drives to market were successful because of Enova's key technological assistance and supply of X-Wall ASICs. But Seagate opted to stop buying Enova X-Wall ASICs or to take a license to Enova's technology. Instead, Seagate created infringing Momentus drives that did not use X-Wall ASICs without a license to do so.

**ANSWER:** Seagate admits that it stopped buying Enova X-Wall ASICs. Except as specifically admitted herein, Seagate denies the remaining allegations of paragraph 24 of the Complaint.

25. At the beginning of 2008, Seagate extended Enova's hardware encryption technology to external hard drives, introducing the BlackArmor portable hard drive at the Consumer Electronics Show (CES), which garnered a "Best of CES 2008" award.

**ANSWER:** Seagate admits that the BlackArmor portable hard drive won the Best of CES award in 2008. Except as specifically admitted herein, Seagate denies the remaining allegations of paragraph 25 of the Complaint.

26. In February 2011, Seagate "announced that it has shipped more than 1 million self- encrypting laptop and enterprise hard drives." Seagate further explained that "[s]ales of the Seagate® hard drives with built-in encryption continue to surge as more computer makers offer the drives to protect against unauthorized access to sensitive data."

**ANSWER:** Seagate admits that it issued a press release in February of 2011 containing the language quoted in paragraph 26 of the Complaint.

27. Through its infringing conduct, Seagate has been able to promote and sell millions of hardware-based encryption drives while disregarding the substantial royalties that it should have paid for use of Enova's valuable patented technology.

**ANSWER:** Denied.

## COUNT ONE

### (Infringement of Patent No. 7,136,995)

28. Enova re-alleges and incorporates by reference those allegations set forth in paragraphs 1–28 [sic] above.

**ANSWER:** Seagate restates its answers to paragraphs 1-27 above, as if fully set forth herein.

29. This claim is made under the provisions of the patent laws of the United States.

**ANSWER:** Seagate admits that the Complaint purports to be made under the provisions of the patent laws of the United States. Except as specifically admitted herein, Seagate denies the remaining allegations of paragraph 29 of the Complaint.

30. Defendant Seagate has been and still is infringing, and will continue to infringe the '995 patent by making, using, offering to sell, selling, and/or importing into the United States, certain hard disk drives including, but not limited to, models known as Momentus and

BlackArmor. The accused Seagate products are sold to manufacturers and/or consumers over the Internet, at retail stores, and through other distribution channels throughout the United States, including Delaware.

**ANSWER:** Seagate admits that Seagate Technology LLC has offered for sale and sold Momentus and BlackArmor hard disk drives in the United States and Delaware. Seagate denies that any of the acts identified in paragraph 30 constitute infringing acts, and, except as specifically admitted herein, Seagate denies the remaining allegations of paragraph 30 of the Complaint.

31. On information and belief, Seagate became aware of the '995 patent at least as early as 2006.

**ANSWER:** Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 31 of the Complaint and therefore denies them.

32. Enova has marked its products with the number of the '995 patent since at least as early as November, 2009.

**ANSWER:** Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 32 of the Complaint and therefore denies them.

33. Seagate has actively induced, and continues to induce, the infringement of the '995 patent by actively inducing the making, use, offer for sale, and/or import of the accused Seagate products.

**ANSWER:** Denied.

34. Seagate has contributorily infringed, and continues to contributorily infringe, the '995 patent by offering to sell and/or selling within the United States, and/or importing into the United States, a component of a machine, manufacture, combination or composition covered by

13

the '995 patent, constituting a material part of the invention, which is not a staple article or commodity of commerce suitable for substantial non-infringing use. On information and belief, Seagate knows that the component is especially made or especially adapted for use in an infringement of the '995 patent.

    **ANSWER:** Denied.

    35.    Seagate has willfully infringed the '995 patent.

    **ANSWER:** Denied.

    36.    As a direct and proximate result of Seagate's infringement of the '995 patent, Enova has suffered and will continue to suffer serious irreparable injury and damages in an amount not yet determined for which Enova is entitled to relief.

    **ANSWER:** Denied.

    37.    As a direct and proximate result of Seagate's infringement of the '995 patent, Enova will continue to suffer serious irreparable injury unless Seagate's infringement of the '995 patent is enjoined.

    **ANSWER:** Denied.

## COUNT TWO

### (Infringement of Patent No. 7,900,057)

    38.    Enova re-alleges and incorporates by reference those allegations set forth in paragraphs 1–28 [sic] above.

    **ANSWER:** Seagate restates its answers to paragraphs 1-37 above, as if fully set forth herein.

    39.    This claim is made under the provisions of the patent laws of the United States, 35 U.S.C. § 271 et seq.

**ANSWER:** Seagate admits that the Complaint purports to be made under the provisions of the patent laws of the United States.  Except as specifically admitted herein, Seagate denies the remaining allegations of paragraph 39 of the Complaint.

40. Defendant Seagate has been and still is infringing, and will continue to infringe the '057 patent, by making, using, offering to sell, selling and/or importing into the United States, certain SATA-interface hard disk drives including, but not limited to, models known as Momentus and BlackArmor. The accused Seagate products are sold to manufacturers and/or consumers over the Internet, at retail stores, and through other distribution channels throughout the United States, including Delaware.

**ANSWER:** Seagate admits that Seagate Technology LLC has offered for sale and sold Momentus and BlackArmor hard disk drives in the United States and Delaware.  Seagate denies that any of the acts identified in paragraph 40 constitute infringing acts, and, except as specifically admitted herein, Seagate denies the remaining allegations of paragraph 40 of the Complaint.

41. Enova has marked its products with the number of the '057 patent since at least as early as March of 2011.

**ANSWER:** Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint and therefore denies them.

42. On information and belief, Seagate became aware of the '057 patent at least as early as April, 2011, when Enova asserted the '057 patent against Seagate's major competitors.

**ANSWER:** Seagate lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the Complaint and therefore denies them.

15

43. Seagate has actively induced, and continues to induce, the infringement of the '057 patent by actively inducing the making, use, offer for sale, and/or import of the accused Seagate products.

**ANSWER:** Denied.

44. Seagate has contributorily infringed, and continues to contributorily infringe, the '057 patent by offering to sell and/or selling within the United States, and/or importing into the United States, a component of a machine, manufacture, combination or composition covered by the '057 patent, constituting a material part of the invention, which is not a staple article or commodity of commerce suitable for substantial non-infringing use. On information and belief, Seagate knows that the component is especially made or especially adapted for use in an infringement of the '057 patent.

**ANSWER:** Denied.

45. Seagate has willfully infringed the '057 patent.

**ANSWER:** Denied.

46. As a direct and proximate result of Seagate's infringement of the '057 patent, Enova has suffered and will continue to suffer serious irreparable injury and damages in an amount not yet determined for which Enova is entitled to relief.

**ANSWER:** Denied.

47. As a direct and proximate result of Seagate's infringement of the '057 patent, Enova will continue to suffer serious irreparable injury unless Seagate's infringement of the '057 patent is enjoined.

**ANSWER:** Denied.

**RESPONSE TO PRAYER FOR RELIEF**

Seagate denies that Enova is entitled to the relief sought in Enova's prayer for relief paragraphs.

**DEFENSES**

**First Defense**

1.  The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

**Second Defense**

2.  Enova's claims are barred, in whole or in part, by the doctrines of license, estoppel, laches, and/or waiver.

**Third Defense**

3.  Enova's claims are barred, in whole or in part, by the doctrine of unclean hands.

**Fourth Defense**

4.  Evova's claims are barred, in whole or in part, by 35 U.S.C. § 286.

**Fifth Defense**

5.  Seagate has not infringed and does not infringe any valid claim of U.S. Patent No. 7,136,995 or U.S. Patent No. 7,900,057.

**Sixth Defense**

6.  The claims of U.S. Patent Nos. 7,136,995 and 7,900,057 are invalid for failure to comply with one or more provisions of Title 35 of the United States Patent Code, including without limitation 35 U.S.C. §§ 101, 102, 103, and 112.

**Seventh Defense**

7.     Any recovery of damages by Enova is limited in whole or in part by the failure of Enova to mitigate its damages.

**Eighth Defense**

8.     Any recovery of damages by Enova is limited in whole or in part under 35 U.S.C. § 287(a).

Seagate reserves the right to assert any additional defenses that further investigation or discovery may necessitate.  By asserting a defense herein, Seagate does not assume a burden of proof or persuasion not otherwise required by applicable law.

**PRAYER FOR RELIEF**

Seagate respectfully requests:

1.     That the Court dismiss with prejudice the Complaint and enter judgment that Enova takes nothing by this action.

2.     That the Court enter judgment that Seagate is not infringing and has not infringed any valid claim of U.S. Patent Nos. 7,136,995 and 7,900,057.

3.     That the Court enter judgment that the asserted claims of U.S. Patent Nos. 7,136,995 and 7,900,057 are invalid.

4.     That the Court determine that this case is exceptional and award Seagate its costs, attorneys' fees, and litigation expenses incurred in this action pursuant to 35 U.S.C. § 285, including interest.

5.     That the Court award Seagate its costs, attorneys' fees, and litigation expenses incurred in this action under any applicable basis.

6.  That the Court award Seagate any other relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Seagate hereby demands a trial by jury for all issues so triable that are raised herein or which hereinafter may be raised in this action.

    Respectfully submitted,

    POTTER ANDERSON & CORROON LLP

OF COUNSEL:

David J.F. Gross
Calvin L. Litsey
FAEGRE BAKER DANIELS LLP
1950 University Avenue
Suite 450
East Palo Alto, CA  94303
Tel:  (650) 324-6700

Christopher J. Burrell
Elizabeth Cowan Wright
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Tel: (612) 766-7000

Dated:  October 31, 2013
1128404/ 40607

By:  */s/ Richard L. Horwitz*
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza 6th Floor
1313 N. Market Street
Wilmington, DE  19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendants Seagate Technology (US) Holdings, Inc. and Seagate Technology LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on October 31, 2013, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on October 31, 2013, the attached document was Electronically Mailed to the following person(s):

| | |
|---|---|
| John G. Day<br>Tiffany Geyer Lydon<br>Lauren E. Maguire<br>Ashby & Geddes<br>500 Delaware Avenue, 8th Floor<br>P.O. Box 1150<br>Wilmington, DE 19899<br>jday@ashby-geddes.com<br>tlydon@ashby-geddes.com<br>lmaguire@ashby-geddes.com | Darryl M. Woo<br>Fenwick & West LLP<br>555 California Street, 12th Floor<br>San Francisco, CA 94104<br>dwoo@fenwick.com |

                    By:   */s/ Richard L. Horwitz*
                          Richard L. Horwitz
                          David E. Moore
                          Bindu A. Palapura
                          POTTER ANDERSON & CORROON LLP
                          Tel: (302) 984-6000
                          rhorwitz@potteranderson.com
                          dmoore@potteranderson.com
                          bpalapura@potteranderson.com

1116151 / 40607